UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KAZIE S. COLE,<br><br>    Petitioner,<br><br>  v.<br><br>WARDEN,<br><br>    Respondent. | CAUSE NO.: 3:20-CV-366-RLM-MGG |

<u>OPINION AND ORDER</u>

Kazie S. Cole, a prisoner without a lawyer, filed an amended habeas corpus petition challenging a disciplinary proceeding at Indiana State Prison (ISO 19-09-0008) in which he was found guilty of possessing a controlled substance. Among other sanctions, he lost 30 days of earned-timed credits.

The charge was initiated when Officer B. Dorre wrote a conduct report stating as follows:

> On 8-30-19 at approx. 5:00 pm I, Ofc. Dorre, was conducting a shakedown on offender Cole (933565) who[] resides in ISO-West 2-Row 3-AI. While searching the cabinet I found a minced onion bottle full of a green leafy substance. Item was confiscated, photographed, and submitted to [the Indiana Department of Correction Office of Investigations and Intelligence].

(ECF 19-1). A notice of confiscated property and an evidence record were also completed, and numerous photographs taken of the bottle and the substance inside.

Mr. Cole pleaded not guilty and, on his request, a lay advocate was appointed for him. (*Id.*) He didn't ask for any witnesses statements, but requested the following physical evidence: (1) "test results from downstate that show it was

oregano, not mixed with any other substance"; and (2) the "confiscated bottle showing oregano label in red ink." (ECF 19-2; ECF 19-3; ECF 19-9 at 1-5.) Investigator Ashley Kilgore notified the screening officer that no outside drug test had been conducted because the case had not been referred for potential criminal charges. She further advised that the substance "tested positive for synthetic cannabinoids on our tests." (ECF 19-10.) In a separate email, Ms. Kilgore provided the hearing officer with multiple photographs "taken all the way around the label," and noting that "[t]here was nothing written on any part of it."[1] (ECF 19-9 at 1.)

At the evidentiary hearing, Mr. Cole presented handwritten questions he wanted to ask the food services director about the use of oregano in the prison kitchen and whether it "contained anything synthetic." (ECF 19-5.) He also asked that a sample of the oregano used in the kitchen be provided to him. He also sought to pose various questions to the Office of Investigations and Intelligence about the availability of outside lab testing of the substance that was recovered. The hearing officer declined to grant a continuance to permit these additional requests. Mr. Cole then made a statement in his defense, claiming that the substance in the bottle was oregano. Based on the evidence, including the photographs and field test results, the hearing officer found Mr. Cole guilty. As a result, Mr. Cole lost 30 days of earned-time credits, had a temporary loss of

---

[1] As noted in the conduct report, the manufacturer's label indicated that the bottle contained "minced onion." (*See* ECF 19-9 at 2-5.)

commissary and other privileges, and was ordered to reimburse the prison the cost of the field drug test.[2] His administrative appeals were denied.

When prisoners lose earned-time credits in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) at least 24 hours' advance written notice of the charge; (2) an opportunity to be heard by an impartial decisionmaker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the decisionmaker of evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" to support the hearing officer's decision. Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).

Mr. Cole raises three claims: (1) there was a "violation of due process under the 14th Amendment Equal Protection Clause for disparate treatment related to drug analysis testing"; (2) prison staff engaged in a "conspiracy to ignore the Indiana Department of Corrections Policy and Administrative Procedures for testing"; and (3) the hearing officer violated his rights under the Eighth Amendment Cruel and Unusual Punishment Clause by imposing "unauthorized sanctions" related to the loss of recreation and other privileges. (ECF 13 at 2.)

---

[2] The exact amount of the test's cost isn't clear from the hearing report, although it was less than $200.00 (*See* ECF 19-8.) The hearing officer's handwriting is in places quite difficult to decipher. In the future, prison staff should take care to write clearly and legibly on the hearing report to facilitate judicial review of their decisions.

3

The warden argues that the first claim is procedurally defaulted because Mr. Cole didn't assert any equal protection challenge in his administrative appeal. A petitioner must exhaust all available state remedies to get federal habeas relief, and the failure to do so constitutes a procedural default precluding relief on the merits. 28 U.S.C. § 2254(b)(1)(A); Markham v. Clark, 978 F.2d 993, 995-96 (7th Cir. 1992). Indiana doesn't provide judicial review of decisions by prison administrative bodies, so pursuing available administrative remedies satisfies the exhaustion requirement in 28 U.S.C. § 2254(b). Moffat v. Broyles, 288 F.3d 978, 981-982 (7th Cir. 2002). "Indiana offers two levels of administrative review: a prisoner aggrieved by the decision of a disciplinary panel may appeal first to the warden and then to a statewide body called the Final Reviewing Authority." *Id.* To properly exhaust, "a legal contention must be presented to each administrative level." *Id.*

Mr. Cole's administrative appeal contains no mention of the Equal Protection Clause, so he defaulted this claim. Moffat v. Broyles, 288 F.3d at 981. He doesn't raise any grounds in his traverse for excusing his default, and instead argues that because he pursued both levels of administrative appeal, he satisfied the exhaustion requirement. However, the exhaustion doctrine required him to present the administrative body with the specific "legal contention" he raises in his federal petition. Moffat v. Broyles, 288 F.3d at 981; *see also* Stevens v. McBride, 489 F.3d 883, 894 (7th Cir. 2007) (to properly exhaust a claim under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner must "present both the operative

4

facts and the legal principles that control each claim" in the state proceeding). He didn't do so, so this claim is procedurally defaulted.

Even if not defaulted, this claim wouldn't entitle him to federal habeas relief. To prevail on an equal protection claim, Mr. Cole must show that a state actor intentionally discriminated against him on a prohibited basis, such as his race or sex.[3] See McCleskey v. Kemp, 481 U.S. 279, 292 (1987); Williams v. Dart, 967 F.3d 625, 637 (7th Cir. 2020). Mr. Cole hasn't established intentional discrimination here. Indeed, he doesn't 0even allege discrimination on a prohibited ground; rather, his claim is that the prison should have sent the substance to an outside laboratory because he asked for it. Prisoners have a right to submit relevant exculpatory evidence, but they do not have the right to the creation of evidence that does not already exist. Wolff v. McDonnell, 418 U.S. at 556. The record reflects the substance recovered from his cell tested positive for cannabinoids in a field test, and Mr. Cole had no constitutional right to demand further testing. This claim is denied.

Mr. Cole's second claim is that internal prison procedures weren't followed in connection with testing the substance that was recovered. A violation of

---

[3] In rare situations, a plaintiff may be able to establish a "class of one" equal protection claim by demonstrating that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Word v. City of Chicago, 946 F.3d 391, 395–396 (7th Cir. 2020). The court does not read the petition to assert a "class of one" equal protection claim, nor does Mr. Cole identify any similarly situated individuals who were treated more favorably. To the extent he complains that prison staff sometimes obtain outside laboratory testing of a controlled substance discovered in the prison, the record contains a rational reason why that wasn't done here. An investigator explained that the prison only goes to the expense of obtaining outside laboratory results when the case is being referred for potential criminal prosecution, which Mr. Cole's case was not.

5

internal prison policy or other state law doesn't present a cognizable basis on which to grant him federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Keller v. Donahue, 271 F. App'x 531, 532 (7th Cir. 2008) (inmate's claim that hearing officer failed to follow internal policies and procedures in prison handbook had "no bearing on his right to due process").

Mr. Cole might also be arguing that the evidence was insufficient. To satisfy due process, there only needs to be "some evidence" to support the hearing officer's decision. Hill v. Supt., 472 U.S. at 455.

> This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.

Webb v. Anderson, 224 F.3d 649, 652 (7th Cir. 2000). A conduct report alone can be enough to support a finding of guilt. McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999). Circumstantial evidence can be sufficient to satisfy the "some evidence" test. Meeks v. McBride, 81 F.3d 717, 721 (7th Cir. 1996). This conduct report, photographs, and positive field test provide sufficient evidence that Mr. Cole possessed a controlled substance. This claim is denied.

Mr. Cole's third claim is that the hearing officer imposed unauthorized sanctions related to his recreation and other privileges. Only challenges to sanctions that affect the duration of custody can be challenged under 28 U.S.C. § 2254. Montgomery v. Anderson, 262 F.3d 641, 644 (7th Cir. 2001). The temporary loss of privileges didn't affect the duration of Mr. Cole's custody, and if he wants to challenge them, he must do so in an action under 42 U.S.C. § 1983. *Id.* at 643-44. This claim doesn't entitle him to federal habeas relief.

Mr. Cole might also be claiming that he was denied evidence. The full panoply of rights available at a criminal trial aren't applicable in the prison disciplinary context, and inmates have no general right to "confront and cross examine adverse witnesses." Rasheed-Bey v. Duckworth, 969 F.2d 357, 361 (7th Cir. 1992). Still, an inmate has a right to request and present evidence when consistent with institutional safety and correctional goals. Wolff v. McDonnell, 418 U.S. at 564.

Mr. Cole did not request any witness statements at the time of screening. He asked for physical evidence in the form of additional laboratory testing and production of the bottle recovered from his cell so that the label could be viewed to see that he (or someone else) had written "oregano" on it in red ink. As already explained, Mr. Cole had no right to demand additional testing or creation of other evidence that didn't already exist. Wolff v. McDonnell, 418 U.S. at 556. No other tests were conducted, and the hearing officer can't be faulted for not turning over evidence that didn't exist. The bottle wasn't turned over to Mr. Cole, but multiple photographs of the label were taken and provided to the hearing officer. Those pictures didn't show anything written on the label. Mr. Cole only had a right to evidence that was exculpatory. Rasheed-Bey v. Duckworth, 969 F.2d at 361; *see also* Piggie v. Cotton, 342 F.3d 660, 666 (7th Cir. 2003) (denial of evidence will be considered harmless error unless the evidence could have aided the prisoner's defense). "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." Meeks v. McBride, 81 F.3d at 720. Even if the bottle had a label stating that it

contained "oregano," this would not directly undercut the reliability of the field test showing that the substance tested positive for cannabinoids.

Mr. Cole also references questions he wanted to ask the food services director and the Office of Investigations and Intelligence, but there's no record that he made those requests at the time of screening. Instead, it appears he presented these proposed questions for the first time at the hearing. The hearing officer can't be faulted for failing to consider evidence Mr. Cole didn't ask for. Miller v. Duckworth, 963 F.2d 1002, 1005 n.2 (7th Cir. 1992) (observing that a "prisoner certainly cannot wait until the day of the hearing" to request witnesses or evidence).

Furthermore, Mr. Cole can't establish a due process violation unless he shows that the requested evidence would have been exculpatory. Rasheed-Bey v. Duckworth, 969 F.2d at 361. He hasn't made that showing. He wanted to ask the food services director about the use of oregano in the kitchen, but that information wouldn't directly undercut the reliability of the evidence pointing to his guilt—namely, an officer's discovery of a green leafy substance in a bottle in his cell that tested positive for the presence of cannabinoids. The questions he wanted to pose to the Office of Investigations and Intelligence related to his desire for additional laboratory testing, but as already discussed, he had no due process right to demand such testing. Wolff v. McDonnell, 418 U.S. at 556. Nor does he offer any reason to suggest that the field test conducted by the Office of Investigations and Intelligence was inaccurate. Based on the record, he has not established a due process violation.

For these reasons, the court DENIES the habeas corpus petition (ECF 13), and DIRECTS the clerk to enter judgment in this case.

SO ORDERED on January 11, 2021

s/ Robert L. Miller, Jr.  
JUDGE  
UNITED STATES DISTRICT COURT